**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FULVIO CASTILLO GOMEZ,<br>Plaintiff,<br>v.<br>SERGIO ALBARRAN, et al.,<br>Defendants. | Case No. 3:26-cv-11107<br><br>**ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

Before the Court is Petitioner Fulvio Castillo Gomez's *ex parte* application for a temporary restraining order ("TRO"), seeking release from the custody of U.S. Immigration and Customs Enforcement ("ICE"). *See* ECF No. 2. The application for TRO was filed shortly after Mr. Gomez filed a petition for writ of habeas corpus against Respondents Sergio Albarran, Field Office Director of the San Francisco ICE Office; David J. Venturella, Acting ICE Director; Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); and Todd Blanche, Attorney General of the United States. *See* ECF No. 1 ("Pet.").

Mr. Gomez's application for TRO is GRANTED for the reasons discussed below.

## I. BACKGROUND

According to the record before the Court, Mr. Gomez is a 58-year-old national of El Salvador, who entered the United States on or about March 3, 2006. Pet. at 2, 9. Upon entering the country, he was apprehended by Border Patrol, processed for removal hearings, and subsequently released. *Id.* at 9. Mr. Gomez later received a Notice to Appear but failed to appear at the hearing. *Id.* An immigration judge ordered him removed in absentia, but the removal order was never served on him. *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

Mr. Gomez later settled in Napa County, where he has lived for the past twenty years. *Id.* at 9. He is married, has children, and runs his own business. *Id.* He is the sole source of financial support for his wife, who has been treated for uterine cancer. *Id.* Mr. Gomez requires daily medication for hypertension and sleep apnea. *Id.* Mr. Gomez has a pending 2025 misdemeanor charge for driving under the influence, to which he has pleaded not guilty. *Id.* at 2. He has no criminal convictions. *Id.*

On March 2, 2026, ICE officers arrested Mr. Gomez in a bank parking lot. *Id.* at 10. After filing a writ of habeas corpus and TRO, this Court granted the TRO, ordered Mr. Gomez released, and enjoined his re-detention without notice and a pre-deprivation hearing. *Id.*

During this time, Mr. Gomez also became aware of the removal order issued in 2006. *Id.* Respondents moved to dissolve the TRO on the ground that the 2006 order changed the basis for detention. *Id.* On May 5, 2026, this Court denied Respondents' motion and granted a preliminary injunction. *Id.* After his release, ICE placed Mr. Gomez on an Order of Supervision, requiring him to report to the San Francisco Field Office. *Id.* at 11. He has appeared at all of his scheduled check-ins. *Id.*

On May 20, 2026, the Department of Homeland Security moved to enforce the 2006 removal order, noting that travel documents to El Salvador were readily available, and that the only obstacle to Mr. Gomez's deportation was the Court's order requiring a pre-deprivation hearing. *Id.* at 12.

On August 5, 2006, Mr. Gomez filed a motion to rescind the 2006 order of removal and reopen proceedings on the ground that he did not receive proper notice of his 2006 hearing. *Id.* at 11 (citing 8 U.S.C. § 1229a(b)(5)(C)(ii); 8 C.F.R. § 1003.23(b)(4)(ii)). The filing of a "motion to reopen" based on a lack of notice "shall stay the removal of the alien pending disposition of the motion by the immigration judge." 8 U.S.C. § 1229a(b)(5)(C)(ii), (C); 8 C.F.R. § 1003.23(b)(4)(ii). The immigration judge declined to consider Mr. Gomez's motion to reopen, which had been filed four days earlier, as untimely, so the motion remains pending. *See* Pet. at 11.

In his August 10, 2026 decision, the immigration judge found that Mr. Gomez was not a danger to the community. *Id.* at 13. The immigration judge did, however, find that Mr. Gomez

United States District Court
Northern District of California

was a "flight risk" because he had failed to appear for his immigration hearing despite receiving notice, and concluded that Mr. Gomez could be re-detained. *Id.* On September 8, 2026, Mr. Gomez appealed the decision to the Board of Immigration Appeals. *Id.* at 13.

On September 29, 2026, in accordance with the Order of Supervision, Mr. Gomez reported to the San Francisco Field Office for a scheduled check-in, at which point Respondents took him into custody. *Id.* at 14. Mr. Gomez does not currently have access to his medication. *Id.*

That same day, Mr. Gomez filed the instant petition for writ of habeas corpus and motion for TRO. He seeks an order from this Court that he be released from Respondents' custody, and, in the interim, an order from the Court that he is not to be removed from this judicial district or removed from the United States, pending final resolution of the petition for writ of habeas corpus. Alternatively, Petitioner seeks a custody hearing before this Court or a Magistrate Judge of this Court in which Respondents bear the burden of proving that Mr. Gomez is a flight risk or danger to the community.

## II. LEGAL STANDARD

The standard for issuing a TRO is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a TRO must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). The Court may also issue a TRO where petitioner has established "serious questions going to the merits" and "the balance of hardships tips sharply in [petitioner's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (citation and internal quotations omitted).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay*

*Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III. DISCUSSION

### A. Issuance of TRO Without Notice

As a preliminary matter, the Court finds that the requirements for issuing a TRO without notice are satisfied. *See* Fed. R. Civ. P. 65(b)(1) (setting forth requirements for issuance of a TRO without notice). Counsel for Mr. Gomez has filed a declaration setting forth specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. *See* ECF No. 2-2. Counsel has also made efforts to give notice to Respondents regarding the filing of this TRO. *Id.* at 6 (noting that after filing the habeas petition, Mr. Gomez's counsel notified the counsel for Respondents via e-mail, "provided a copy of the petition," and "left a voicemail" on her phone).

### B. *Winter* Factors

The Court next considers Mr. Gomez's showing on the *Winter* factors.

#### *1. Likelihood of Success/Serious Questions Going to the Merits*

The petition asserts four claims for relief: (1) detention in violation of 8 U.S.C. § 1231(a)(6); (2) revocation of release in violation of governing regulations; (3) re-detention in violation of the Fifth Amendment's substantive due process protections; and (4) re-detention in violation of the Fifth Amendment's procedural due process protections. Mr. Gomez has raised serious questions going to the merits of his claim that he is not subject to re-detention under § 1231(a)(6).

Under 8 U.S.C. § 1231(a)(2) detention is mandatory during the 90-day removal period. After this removal period, the noncitizen "shall be subject to supervision." *Id.* § 1232(a)(3). This 90-day removal period has long since expired for Mr. Gomez.

The record further indicates that Respondents may be statutorily prohibited from removing Mr. Gomez. Under 8 U.S.C. § 1229a, the filing of a motion to reopen for failure to receive notice "shall stay the removal of the alien pending disposition of the motion by the immigration judge." 8 U.S.C. § 1229a(b)(5)(C); 8 C.F.R. § 1003.23(b)(4)(ii). Mr. Gomez filed such motion, and

Respondents concede that it remains pending. *See* ECF No. 2 at 12. Mr. Gomez has also noted that if his motion to reopen is denied, he will appeal to the Board of Immigration Appeals and, if necessary, petition for review in the court of appeals. Pet. at 12. Under these circumstances, Mr. Gomez would be detained for numerous months, and his detention would not further its intended purpose of effectuating a removal order. *See Zadvydas v. Davis*, 533 U.S. 678, 689, 699 (2001) (noting that detention under 8 U.S.C. § 1231(a)(6) is only authorized for the time "reasonably necessary to bring about that alien's removal" and is unauthorized "once removal is no longer reasonably foreseeable").

Furthermore, Mr. Gomez has appealed the August 10, 2026, custody order to the Board of Immigration appeals. ECF No. 2 at 17. His appeal, which alleges procedural irregularities and misapplications of the law, presents significant concerns about the correctness of the immigration judge's order.

Finally, Mr. Gomez has filed a motion to relate this case to his prior case to seek enforcement of the Court's May 5, 2026, preliminary injunction order. On this record, serious questions exist as to the merits of Mr. Gomez's petition. These circumstances weigh in favor of grating this immediate relief so that this case can be considered by the judge who issued the earlier preliminary injunction.

2. *Irreparable Harm*

The Court finds that Mr. Gomez has demonstrated a likelihood of irreparable harm absent issuance of a TRO. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Session*s, 872 F.3d 976, 995 (9th Cir. 2017). Mr. Gomez is the sole source of financial support for his wife, who has received treatment for uterine cancer. Pet. at 9. Mr. Gomez also requires daily medication for high blood pressure and does not have access to his medication while in custody. *Id.* Based on the record, Mr. Gomez has demonstrated that he is likely to suffer significant irreparable harm should the TRO not issue, tipping the balance of hardships sharply in his favor.

United States District Court
Northern District of California

*3. Balance of Equities and Public Interest*

The last two *Winter* factors, the balance of the equities and the public interest, are considered together where, as here, the government is the opposing party. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) ("When the government is a party, these last two factors merge."). "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering[.]" *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (internal quotation marks, citations, and alterations omitted); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Without the requested injunctive relief, Mr. Gomez faces deprivation of his liberty. The comparative harm potentially imposed on Respondents is minimal—a short delay in detaining and removing Mr. Gomez in the event he ultimately fails to prevail on his habeas claims. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, the Court finds that the balance of equities and public interest tip sharply in favor of Mr. Gomez.

**C. Issuance of a TRO is Warranted**

Having considered the four *Winter* factors, the Court concludes that it is appropriate to issue a TRO to require Mr. Gomez's release and return him to the status quo. *See E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Mr. Gomez's detention. Accordingly, the application for TRO is GRANTED as set forth below.

**D. Security**

Finally, the Court exercises its discretion to determine that a security is not necessary.

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id*. Because the Court perceives no prejudice to Respondents resulting from the TRO, the Court finds it appropriate to issue the TRO without requiring security.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Mr. Gomez's application for TRO is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Mr. Gomez immediately from Respondents' custody and are ENJOINED AND RESTRAINED from re-detaining Mr. Gomez without notice and a pre-deprivation hearing before a neutral decisionmaker.

(3) Respondents are ENJOINED from removing Mr. Gomez from this judicial district, and, if they have already done so, are ORDERED to return him to this judicial district.

(4) Respondents are PROHIBITED from removing Mr. Gomez from the United States while this TRO is in effect.

(5) Respondents are PROHIBITED from imposing new conditions of release, such as electronic monitoring and in-person or virtual check ins.

(6) Respondents are ORDERED to return any of Mr. Gomez's personal property confiscated upon his arrest.

(7) Respondents are ORDERED TO SHOW CAUSE at an in-person hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at 9:00 a.m. on October 7, 2026, why a preliminary injunction should not issue. Respondents SHALL file a response to Mr. Gomez's motion by 10:00 a.m. on October 5, 2026. Any reply SHALL be filed by

5:00 p.m. on October 6, 2026. The assigned Judge may modify this schedule.

(8) Mr. Gomez SHALL serve on Respondents the petition, summons, and this order by 12:00 p.m. on September 30, 2026.

(9) Respondents SHALL file a status report regarding their compliance with this order by 10:00 a.m. on October 1, 2026.

(10) This order shall remain in effect until 9:45 p.m. on October 13, 2026.

Dated: September 29, 2026, at 9:45 p.m.

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California